**In the Matter of Theresa Bernette WRIGHT and Lisa Marie Wright, dependent children under the age of 18 years.**

No. 46601.

Supreme Court of Oklahoma.

July 2, 1974.

Stanley L. Foster, Richard Vallejo, Arthur Lory Rakestraw, Oklahoma City, for appellant.

Vivian Diffendaffer, Asst. Dist. Atty., Nan Patton, Asst. Public Defender, Oklahoma City, for appellee.

HODGES, Justice.

The issue presented is whether the trial court denied Edwina Mary Grace Clark, formerly Wright, appellant (Mother) due process by refusing to hear evidence which might have shown that she had corrected the conditions upon which the children were made wards of the court and declared dependent neglected children and which resulted in the ultimate termination of parental rights.

At the adjudicatory hearing on March 15, 1972, the children, Theresa and Lisa were made wards of the court as dependent and neglected children. The court ordered that:

" * * * said children remain in the temporary custody of the Department of Institutions, Social and Rehabilitative Services, State of Oklahoma; and that said Department be and hereby is requested to make an investigation and evaluation of the mother and her living arrangements; and that this matter be set for disposition upon receipt of said report."

The transcript reveals that at this hearing the court made the following statements:

"The Department of Institutions, Social and Rehabilitative Services is ordered to make an investigation and evaluation of the mother and her living arrangements. This matter will be set for disposition when said report is received."

Counsel: I didn't hear the date, Judge.

The Court: No date. When I get the report, I'll notify you and we'll set it down.

In reliance on the court's order which indicated that the court would set the case for disposition, the respondent apparently awaited the disposition hearing. The hearing was set by the court on April 16, 1973, at the request of the Department of Institutions, Social and Rehabilitative Services (DISRS). The mother filed an answer and a cross-petition subsequent to the adjudicatory hearing. However, she was not allowed to present evidence to the court at the dispositional hearing although she requested an opportunity to show that she maintained regular contact with her children through DISRS during this period and that she had corrected all conditions At least part of the facts alleged by the which led to the dependent-neglect status. mother were corroborated by the DISRS report.

The court refused to consider the answer and the cross-petition, or the DISRS report. The court stated in respect to the DISRS report:

"* * * I did not use her report in arriving at my decision that respondent had failed to show the court the condition had been corrected within six months or apply for an extension of the six months."

The parental rights of the mother were terminated by the court on April 6, 1973, and her motion for new trial was denied by the court on April 27, 1973.

It is provided by 10 O.S.1971 § 1115(a) (b) that:

"(a) After making an order of adjudication, the court shall hold a dispositional hearing, at which all evidence helpful in determining the proper disposition best serving the interest of the child and the public, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing."

"(b) Before making an order of disposition, the court shall advise the District Attorney, the parents, guardian, custodian or responsible relative, or their counsel, of the factual contents and the conclusion of reports prepared for the use of the court and considered by it, and afford fair opportunity, if requested, to controvert them."

In this case the court refused to allow the mother to present any evidence other than evidence relating to her failure to show a change in condition or to apply for an extension within the six month period as provided by 10 O.S.1971 § 1130(c)(3).

"The finding that a child is delinquent, or mistreated or neglected, shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:

(c) A finding that a parent who is entitled to custody of the child.

(3) is unfit by reason of debauchery, intoxication, or habitual use of narcotic drugs, or repeated lewd or lascivious behavior or other conduct that is detrimental to the physical or mental health or morals of the child, and the parent has failed to show that the conditions have been corrected within a period of six (6) months after the child, or children, were adjudged dependent or neglected and a permanent termination of parental custody of the child, or children, is necessary to protect its physical or mental health or morals; provided further, that the court may extend the time in which such parent may show the condition has been corrected, if, in the judgment of the

court, such extension of time would be in the best interest of the child or children."

 The Court based its order on the failure of the mother to show a change in condition by initiating proceedings on her own within six months, rather than making a finding that she had not changed the living condition of the family. The interpretation of the statute was based on a presumption rather than on a finding and was a denial of due process to the mother.

Due process requires notice and the right to a hearing. The mother was given notice as required by 10 O.S. 1971 § 1131, but she was denied the right to be heard. The court stated that it would sustain the motion to terminate parental rights "without any evidence other than what's in the record." 10 O.S. 1971 § 1131 provides that if personal notice is not served parental rights may not be terminated for 6 months.

The fundamental requisite of due process is the opportunity to be heard. Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). This requirement is all the more important when the judicial procedure concerns the continuance to the parent-child relationship.

The United States Supreme Court held in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551, 558, 559 (1972) that:

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 [1045, 29 A.L.R. 1446] (1923), 'basic civil rights of man,' Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 [1660] (1942), and '[r]ights far more precious . . . than property rights,' May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 [1226] (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can nei-

ther supply nor hinder.' Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 [652] (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, Meyer v. Nebraska, supra, 262 U.S. at 399, 43 S.Ct. [625] at 626 [67 L.Ed. at 1045], the Equal Protection Clause of the Fourteenth Amendment, Skinner v. Oklahoma, supra, 316 U.S. at 541, 62 S.Ct. [1110], at 1113 [86 L.Ed. at 1660], and the Ninth Amendment, Griswold v. Connecticut, 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510, 522 (1965) (Goldberg, J., concurring)."

The U. S. Supreme Court held in Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90, 96 (1971) that:

"The hearing required by the Due Process Clause must be 'meaningful,' Armstrong v. Manzo, 390 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), and 'appropriate to the nature of the case.' Mullane v. Central Hanover Bank & Trust Co., supra, 339 U.S. [306], at 313, 70 S.Ct. [652], at 657. [94 L.Ed. 865 at 872, 873] * * *"

 It is a premise which hardly seems to need explanation that a hearing which excludes consideration of the elements essential to the decision of whether parental rights shall be terminated does not meet this standard.

The United States Supreme Court held in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed. 551, 562 (1972) that:

" * * * The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praise-

worthy government officials no less, and perhaps more, than mediocre ones.

"Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities; it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand."

The cause is therefore reversed and remanded to the trial court for a full evidentiary hearing on the question of whether the mother has corrected the conditions upon which this action is based and for a determination of what disposition is in the best interests of the children.

DAVISON, C. J., WILLIAMS, V. C. J., and BERRY, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.